## STATE vs. JOHN BOARDMAN, Appellant.

### Knox.    Opinion June 3, 1899.

*Town By-Law.   Approval.   Use of Highway.   Law and Fact.   R. S., c. 3, § 59.*

An ordinance, or town by-law, which sets apart and designates a certain portion of the street or highway over and upon which may be transported on wheels lime-stone and other materials, where the load, exclusive of cart or vehicle, exceeds 2,500 pounds in weight, and prohibiting under a penalty all persons from using any other portion of the street for such purposes, is not required to be approved by the county commissioners or a justice of this court in order to become valid.

Such a by-law is not inconsistent with any law of the state. It does not deprive a person of any right,—it simply regulates the exercise of it, and affords all travelers much better opportunities for travel than they would otherwise enjoy.

Whether such a by-law is reasonable and valid with reference to the way and locality.in this case, *held;* that the portion of the street which may be used by heavily loaded vehicles must be reasonably suitable for the purpose; and the by-law will be valid or invalid—depending upon whether that portion of the way to which such vehicles are restricted is or is not reasonably suitable for the purpose.

Where the defendant charged with violating such a by-law offered evidence to prove that the portion of the street, to which his heavily loaded team was restricted, was absolutely impassable, *held;* that the evidence should have been admitted, because, if true, the by-law became unreasonable.

The question of the reasonableness of a by-law is for the determination of the court. Certain facts are to be passed upon by the jury, but the standard upon the question of the reasonableness or otherwise of the by-law is established by the court.

ON EXCEPTIONS BY DEFENDANT.

This was a complaint for alleged violation of a by-law of the town of Rockport prohibiting the use of a certain portion of Union Street in that town by heavily loaded teams. The defendant was convicted before a trial justice and appealed to this court sitting at nisi prius.

In addition to other grounds of defense, which are stated in the opinion of the court, the defendant offered evidence to show "that the portion of the street covered by the by-law, under which this complaint was made, was, at the time the offense was alleged to have been committed, and for years prior thereto, had been con-

stantly used by the teamsters in hauling lime-rock from the quarries near the Camden line to the kilns at Rockport, a distance of some half mile; that the constant hauling of such heavy loads of rock, averaging three or four tons per load, exclusive of weight of the team, over and upon said fifteen foot space of reserved or specified part of the road, had cut deep ruts in that part of the road and thrown up great ridges of earth, making it very difficult or well nigh impossible to keep that portion of the road in suitable repair for the passage of ordinary teams at all times; that the defendant carrying on the business of freighter or teamster, hauling freight between Camden and Rockland, used the kind of cart or team in common use for carriage of miscellaneous freight, to wit, a jigger or slung body, having the body of the cart less than eight inches from the ground when light, the body hung low for convenience in loading and unloading heavy freight; that owing to the rutted and ridged condition of this said fifteen foot space he found it impossible during the greater part of the time to drive over it with his loaded jigger, the weight of a heavy load causing the body of the jigger to 'squat' or settle some two inches or more; that upon the day named in the complaint he drove over said Union Street with his jigger loaded with a seven thousand pound anchor, the body of the jigger by reason of this weight being pressed down to within six inches of the level ground; that when he came up to the quarry road, where the quarry road comes up into the main road, as was his custom, he drove into that fifteen foot limit; that he drove there a short distance before he found that the body was very likely to drag in a very short time; that the ruts were there ahead of him as far as he could see. He knew the minute the body dragged that he was stalled and couldn't get out; that he couldn't yank it out by putting on horses, that it would break the jigger, and rather than that he got out of the ruts when he could."

The defendant also offered evidence tending to show that the rutted and ridged condition of the said fifteen foot strip of road, making it impassable for a loaded jigger, was its constant and normal condition during all that portion of the year when lime-rock

was hauled over that portion of the road on wheels, making it an absolute impossibility for him to comply with the terms of the by-law; and that if compelled to comply strictly with its terms, his business as freighter must be either entirely given up, or so far injured as to result in serious financial loss to him. But the presiding justice excluded the evidence on the ground that it was immaterial, it not being claimed that the condition of the highway within fifteen feet of the westerly rail of the electric road was due to any sudden or unforeseen emergency.

To the rulings of the presiding justice relating to the by-law, and excluding the evidence offered, the defendant after a verdict of guilty, as directed by the court, took exceptions.

*Washington R. Prescott*, County Attorney, for State.

If the road set apart for heavy travel was out of repair it was the duty of the town to repair it. Section 52 of chap. 18, R. S., provides that town ways and streets shall be kept open and in repair so as to be safe and convenient for travelers with horses, teams and carriages, and in default thereof it may be indicted, convicted and a fine imposed. The next section provides that if a town unreasonably neglects to keep in repair, after one of the municipal officers has had five days' notice or actual knowledge of the defective condition, any three or more persons may petition the county commissioners, and a hearing ordered, and if adjudged out of repair, the town be given a time in which to repair the same with judgment for costs. If a way be out of repair by neglect of the officers of the town, and not because of any unforeseen emergency, the law offers ample remedy to travelers which will result in speedy repair of the way. There is no claim that the condition complained of and to show the existence of which the evidence was offered by the defendant was the result of any unforeseen emergency. The exceptions show and claim that the defective condition complained of was the result of long and continuous neglect by the road commissioner of the town of Rockport. But there is no suggestion in the exceptions that the defendant ever notified the road surveyor or the municipal officers of the town of the alleged defective condition of the road.

*M. T. Crawford*, for defendant.

This by-law is prohibitive upon its face, restrictive of the rights of the public to free passage over public streets, tends to check and delay and annoy those doing business over the public streets, is burdensome, oppressive and unreasonable because of its logical and necessary consequences and effects upon the public.

It is the policy of the law to require of municipal corporations a strict observance of their powers. Any doubt or ambiguity arising out of the terms of the legislature in making a grant of power must be resolved in favor of the public; and a power cannot be exercised where it is not clearly comprehended within the words of the act, or determined therefrom by necessary implication. XV Am. and Eng. Ency. of Law, page 1041 and notes.

Towns may prohibit rapid driving over the streets, as in *Com.* v. *Worcester*, 3 Pick, 461; may regulate the use of omnibuses and stage coaches for the carrying of passengers, as in *Com.* v. *Stodder*, 2 Cush. 562; may compel licenses of cartmen, as in *Brooklyn* v. *Breslin*, 57 N. Y. 591; may limit the time during which hacks or public carriages may stand in certain places, as in *Com.* v. *Robertson*, 5 Cush. 438; may designate certain places for public teams to stand while waiting for hire, as in *Com.* v. *Matthews*, 122 Mass. 60, and in a thousand ways may seek the public benefit by wisely drawn and wisely applied by-laws. XV Am. and Eng. Ency. of Law, p. 1168 and notes, and Ib. XVII, p. 248 and notes.

But this by-law is not a regulation, it is an absolute prohibition; it has not in view the public health, safety or convenience, but simply the benefit of that one town and its officers, the saving of work and money in properly caring for a public highway, and the result is oppression and hinderance and delay and burdens for the general public.

SITTING: EMERY, HASKELL, WHITEHOUSE, WISWELL, STROUT, FOGLER, JJ.

WISWELL, J. Complaint for the alleged violation of the following ordinance or by-law of the town of Rockport: "All of

that portion of Union Street in Rockport situated Northerly and Westerly and within fifteen (15) feet of the Northerly and Westerly rail of the Electric R. R. track, is hereby set apart and designated as the portion of said street over and upon which lime-stone may be transported on wheels, also all other material on wheels, where the load, exclusive of cart, wagon or vehicle, exceeds 2,500 pounds in weight; and all persons are prohibited from using any other portion of said street for the purposes afore-said; and any person engaged in transporting lime-stone on wheels or other material of the weight aforesaid, on wheels, using any other portion of said street for such purpose, shall be fined not less than two nor more than five dollars for each offense, to be recovered, by complaint, to the use of the town of Rockport."

The respondent attacks the validity of this by-law upon three grounds, namely, because it had never been approved by the county commissioners of Knox county or by a justice of the Supreme Judicial Court; because it is inconsistent with the laws of the state; and because it is unreasonable. Must such an ordinance be approved by the county commissioners or by a justice of this court? We think not.

The legislature of this state has by various enactments at different times given to municipalities the power to adopt by-laws in regard to a large number of matters, all of which different enactments have been condensed into c. 3, § 59, of the present revised statutes. As that section now reads municipalities are authorized to adopt such ordinances for the purposes named in twelve separate paragraphs. By paragraph I, "For managing their prudential affairs," such by-laws must be approved by the county commissioners or by a judge of this court; but in regard to by-laws in relation to the purposes, enumerated in the other eleven paragraphs of the section, no such approval is made necessary.

The words "prudential affairs" are certainly very indefinite and unsatisfactory, and it might be a very difficult matter in many cases to determine just what is or is not included within the meaning of the expression. This term was taken from the Massachusetts statute where the same difficulty has been appreciated. In

the case of *Spaulding* v. *Lowell*, 23 Pick. 71, Chief Justice Shaw said: " The ambiguity lies in the indefinite term, 'prudential affairs,' and the difficulty arises in each case in settling what concerns fall within it." But however indefinite the term may be, that it was not intended to cover the matters enumerated in the other paragraphs of the section, is shown, we think, both by the language of the original enactments and the text and arrangement of paragraphs in the section of the revision, by which towns are empowered to make by-laws in regard to police regulations; respecting infectious diseases; for setting off portions of streets for sidewalks; in regard to the erection of wooden buildings; and as to various other matters.

The authority of a municipality to adopt such an ordinance as the one here under consideration is given, we think, by paragraph IX: " For the regulation of all vehicles used therein, by establishing the rates of fare, routes and places of standing, and in any other respect."

So therefore it only remains to inquire whether this by-law is inconsistent with law or is unreasonable. We are unaware of any law of the State which it contravenes. All public ways and streets are for the accommodation primarily of travelers of all classes and kinds, but the traveler is not in all, or in many cases, entitled to the whole width of the street for his accommodation. He is entitled to a reasonably safe, convenient and practicable opportunity for travel and passage. A portion of a way as located, not being needed for travel, may be left outside of the wrought road, another portion may be set off for sidewalks and the use of the remaining width of the way so regulated that heavily loaded teams and other vehicles shall use exclusively different portions thereof, and still no one would be deprived of his rights, but upon the other hand all might be very much benefited in the exercise of them.

Highways and streets are of course for the public use, they are not alone for the people of the municipality in which they are located, and such ways can not be considered in any sense the easement or property of the town; but the municipality in which a public way is located has been vested by the legislature with the

supervision and control of such ways for public use, and are charged with the responsibility of keeping them in repair and reasonably suitable and sufficient for use by the public for purposes of travel. The power to properly regulate the use of ways so as to preserve for all the rights of all is not inconsistent with any provision of law.

Such a by-law does not deprive a person of any right, it simply regulates the exercise of it and it can be readily seen that such a regulation may afford to all travelers much better opportunities for travel than they could otherwise enjoy.

In *Commonwealth* v. *Stodder*, 2 Cush. 562, the court said : "We cannot doubt that a by-law, reasonably regulating the use of the public streets of the city as to carriages of an unusually large size, or as to those which from the mode of using them would greatly incommode, if not endanger, those having occasion to use such public streets, would be valid and legal; and that such regulations might prescribe certain streets as the route of travel for such vehicles, and provide for their exclusion from certain other streets."

Was this by-law reasonable? By its terms all persons passing over the street named, with any vehicle on which there were loads exceeding 2,500 pounds in weight, are restricted to the use of fifteen feet of the width of the street next to the electric railroad track. That this would be a reasonable, and in many cases a most salutary regulation, we have no doubt; but such a by-law might be unreasonable, if that portion of the way to which such vehicles were restricted was allowed to become in such a condition as to be impassable, that is, if the only portion of the way which the by-law allowed to be used for heavily loaded vehicles could not be at all used, because it had been allowed to become in such a condition of want of repair as to be impassable, then that portion of the public, who had occasion to use the way for this purpose, would be absolutely deprived of their right to use the way for the purpose of travel.

For such a by-law then to be reasonable and valid, with reference to such a way and in such a locality as in this case, that portion of the street which may be used by heavily loaded vehicles

must be reasonably suitable for the purpose; and the by-law will be valid or invalid depending upon whether that portion of the way, to which such vehicles are restricted, is or is not reasonably suitable for the purpose.

Here the defendant offered evidence tending to prove that the fifteen feet in width of street next to the railroad track was absolutely impassable. The evidence was excluded. We think it should have been admitted because, if true, the by-law became unreasonable.

It is true that the question of the reasonableness of a by-law is for the determination of the court, and this conclusion does not take away from the court the determination of the question: certain facts will have to be passed upon by the jury; but the standard upon the question of the reasonableness or otherwise of the by-law is established by the court.

*Exceptions sustained.*