## EX PARTE WILL C. STRITTMATTER.

### No. 395.   Decided January 26, 1910.

**1.—Vagrancy—Constitutional Law—Statutes Construed.**

Paragraph "d" of section 1 of the General Laws of the Thirty-first Legislature, chapter fifty-nine, page 111, declaring who are vagrants, is constitutional.

**2.—Same—Who is a Vagrant—Habitual Idler.**

It must appear and be shown that the person charged under paragraph "d," section 1, General Laws of the Thirty-first Legislature, was able to work, and that being so able he habitually loafed, loitered and idled in the city, town or village, or at a railroad station, or other public place for the larger part of his time without any regular employment and without any visible means of support.

**3.—Same—Law not Void for Uncertainty—Occasional Employment.**

Paragraph "d," of section 1, General Laws of the Thirty-first Legislature, is not so vague as to render the law invalid, and a person is not relieved from a charge of vagrancy who habitually loafs, loiters and idles if he is without visible means of support, by the mere fact that only occasionally he has employment at odd jobs.

Appeal from the District Court of Bexar. Tried below before the Hon. Edward Dwyer.

Appeal from a habeas corpus proceeding asking release from arrest under a complaint charging relator before a Justice Court with the offense of vagrancy.

The opinion states the case.

*Ed Haltom,* for relator.—Cited 8 Cyc., 820 and 926, and authorities cited in·opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Relator was convicted in the Justice Court, Precinct No. 1, of Bexar County, in November of last year, upon a complaint charging him with vagrancy under paragraph "d" of section 1 of the General Laws of the Thirty-first Legislature, chapter 59, p. 111. Some time thereafter he presented his petition for writ of habeas corpus to Hon. Edward Dwyer, Judge of the 37th Judicial District, and upon hearing relator was remanded to the custody of the sheriff of Bexar County.

The sole question here presented is as to the constitutionality of paragraph "d" of the Act named above. This paragraph of the Act in question is claimed to be invalid: First, because in contravention of the Thirteenth Amendment to the Federal Constitution which provides: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States or any place subject to their jurisdiction." It is also urged that the Act in question is contrary to the spirit, if not the tenor, of sections 13 and 19 of the Bill of Rights. These sections are as follows: "Sec. 13. Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. All the courts shall be open, and every person for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law." "Sec. 19. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Said Act is also claimed to be invalid in that it is uncertain, and must fail of its intent for that, as provided by article 6 of the Penal Code: "Whenever it appears that a provision of the penal law is so indefinitely framed or of such doubtful construction that it can not be understood, either from the language in which it is expressed, or from some other written law of the State, such penal law shall be regarded as wholly inoperative." Fourth, the Act in question is claimed to be invalid in that it is against common right and reason. In support of his contention counsel for appellant has filed a learned and well considered brief. His contentions, we think, however, are not sound, and our conclusion is that there is no such infirmity in the law as would entitle relator to his discharge.

If the power of the Legislature, in the absence of constitutional mandate, could be made a matter of serious contention, the issue is placed beyond dispute by the terms of our Constitution, which, in section 46 of article 3, thus provides: "The Legislature shall at its first session after the adoption of this Constitution enact effective vagrant laws." Much attention is directed in the brief of counsel to the common law

definitions of vagrancy. However interesting as a mere matter of learning these views may be, it has not infrequently been held by many courts that the statutes, both in England and America, have so much and so frequently dealt with the subject of vagrancy, that the common law on the subject has become unimportant. 29 Am. & Eng. Enc. of Law, p. 568; People v. Forbes, 4 Park Crim. (N. Y.), 611. That it is within the power of the Legislature in this State to define, subject to certain broad limitations, what is a vagrant, can admit of no sort of doubt, and statutes which have classed prostitutes, professional gamblers and others of that class as such, have always been upheld. With the growth of the State and the congestion in our large cities where the idle, the vicious and the depraved congregate around many public places, it was essential to the peace of the State and the protection of society that some further extensions of this definition should be made. It is not to be denied that the Act in question, in some of its definitions, goes very far, and we are not called on now to decide whether in their entirety these definitions are so limited and framed as to be free from criticism or condemnation by the courts. The only question we have for consideration is the validity of paragraph "d" of this section. It will be noted that by this article all able-bodied persons who *habitually* loaf, loiter and idle in any city, town or village or railroad station, or any other public place in this State for the larger portion of their time, without any regular employment and without any visible means of support are classed and defined as vagrants. The want of visible means of support is usually made an essential element of the offense of vagrancy, and when it is so made an ingredient of the offense it must be shown. Welborn v. State, 119 Ga., 429; State v. Cummins, 78 Ind., 251. What is meant by the term able-bodied and ability to work has been the subject matter of judicial review not infrequently, but are not words, as we believe, difficult of definition or construction, nor are they so general as to invalidate the statute. The following cases illustrate and involve the construction of this term. Price v. State, 67 Ga., 723; Commonwealth v. Carter, 108 Mass., 17. In the case of McHenry v. State, 42 Texas Crim. Rep., 469, it was in effect held that it became a question of fact under such a charge and allegation as to whether one was in fact a vagrant within contemplation of the laws and statutes of the State.

To the objection that the second sentence of the paragraph in question undertakes to establish a rule of evidence that would prevent the court from making inquiry or ascertaining whether the lack of employment was purposeful or the result of viciousness and indolence, we can not accede. We think the true intent of this sentence is to be gathered only when read in connection not only with the preceding sentences, but with the entire Act of which it is a part. Therefore, before a conviction could be had under this section we think it would have to appear and be shown that the person charged was able to work, and that being so able he habitually loafed, loitered and idled in the

city, town, or village, or at a railroad station or other public place for the larger part of his time, without any regular employment and without any visible means of support. We think the terms "loiter, loaf and idle" are wholly at variance with the occasional or even frequent presence at such public places by deserving persons who may be for the time being unemployed. It is difficult in matters of this sort by any language which the Legislature could have employed to have laid down a rule so definite and precise as not to be the subject matter of criticism. In constructive legislation of this sort, along new lines, some difficulty will be found in so framing the definition as not by a strained construction, or even perhaps by a literal construction, to place improper and grievous burdens on deserving persons. We think the term "larger portion of their time," as used in this section, is not so vague as to render the law invalid when read in connection with what follows, that is to say, that one is not relieved from a charge of vagrancy who *habitually* loafs, loiters and idles if he is without visible means of support by the mere fact that only occasionally he has employment at odd jobs. We think, indeed, that the law is a wholesome one, well within the power of the Legislature, and that none of the objections are tenable. That in its practical administration, cases of imposition or hardship may arise may be true, but under the liberal rule laid down by this court in the case of McHenry v. State, supra, it is unlikely, if not in truth, inconceivable that any good and deserving man or woman should suffer punishment under this Act who is not in fact guilty under its terms.

Finding no error in the proceedings of the court below, it is ordered that the judgment be and the same is hereby affirmed.

*Affirmed*