## CITY OF DALLAS et al. v. CITY PACKING CO.

### No. 12063.

Court of Civil Appeals of Texas. Dallas.
July 20, 1935.

Rehearing Denied Sept. 28, 1935.

H. P. Kucera, A. J. Thuss, W. Hughes Knight, and J. Manuel Hoppenstein, all of Dallas, for appellants.

Leake, Henry & Young, of Dallas, for appellee.

JONES, Chief Justice.

Appellee, City Packing Company, is a Texas corporation, engaged in the business of a packer, and slaughters food animals and prepares meat and meat products in its plant for the Texas market. The plant is located in the city of Fort Worth and has attempted to sell its products within the territory of the city of Dallas. After it had contracted to sell approximately $2,000 worth of its products in such territory, it was forbidden by appellants the right to deliver its meat and meat products in said city.

The suit was instituted by appellee as an injunction suit, to restrain appellants from denying appellee the right to enter such territory with the products of its plant, and for the immediate issuance of a temporary writ of injunction to restrain interference with its filling the contracts it had theretofore made and the further sale of its products to the dealers in said territory. When appellee's petition was filed, the judge caused the application for a temporary writ of injunction to be set down for hearing at an appointed day, and notice issued to appellants of such hearing. On the day named, the parties appeared and, after an exhaustive and careful hearing, the court directed the issuance of a temporary writ of injunction.

As a basis for the issuance of a temporary writ of injunction, the court found

as a fact that "the meat inspection standard of the city of Fort Worth is equal to that maintained by the United States Department of Agriculture," and the court concluded from such fact "that a temporary writ of injunction should be granted to the plaintiff against the defendants, and each of them, from interfering with plaintiff in the sale of meats in the city of Dallas, on the primal part of which is the Meat Inspection Brand of the City of Fort Worth, so long as the meat inspection standard of said city of Fort Worth is equal to that maintained by the United States Department of Agriculture, and that plaintiff should be denied injunction as to meat products."

In accordance with such finding and conclusion, the court granted a temporary injunction, restraining appellants and each of them "from in any wise preventing or interfering with the offering for sale or selling the meats of plaintiff in the city of Dallas, on the primal part of which is the meat inspection brand of the city of Fort Worth, Texas, and the said defendants, J. W. Bass, Director of Public Health, and the City of Dallas, and each of them, their respective attorneys, agents and employees, are temporarily restrained and enjoined until further orders of this court in this cause, from in any manner or in any wise preventing or interfering with the offering for sale or sale by the plaintiff, of its meats in the city of Dallas, on the primal part of which is the meat inspection brand of the city of Fort Worth." It was further ordered by the court that appellee be denied a temporary injunction against the defendants, or either of them, as to the sale of its meat products.

■ The finding that the meat inspection standard of the city of Fort Worth is equal to that maintained by the United States Department of Agriculture is supported by substantial evidence, is binding on this court, and is found as an established fact on this appeal. The effect of this order, granting the temporary writ of injunction, is to overrule the judgment of Dr. J. W. Bass, director of public health of the city of Dallas, and while the injunction is in force, to permit the sale of meat by appellee, which has the inspection brand of the city of Fort Worth on its primal part, and to sustain Dr. Bass in excluding appellee from the territory of the city of Dallas in the sale of any of its meat products manufactured by its plant, until further orders of the trial court.

■ Under the settled law of this state, the issuance of a temporary writ of injunction in a pending suit is lodged in the discretion of the trial court, and an order granting or refusing a temporary writ of injunction is only subject to revision by an appellate court, when there is shown a clear abuse of such discretion. Harding v. Pearson & Co. (Tex. Com. App.) 48 S.W.(2d) 964; City of Farmersville v. Texas-Louisiana Power Co. (Tex. Civ. App.) 33 S.W.(2d) 272; Meyer v. Cockcroft (Tex. Civ. App.) 273 S. W. 665; Dilworth v. Buchanan (Tex. Civ. App.) 275 S. W. 177; City of Waco v. Grimes (Tex. Civ. App.) 279 S. W. 312; Blair v. Paggi (Tex. Civ. App.) 282 S. W. 627; Woods v. Humber (Tex. Civ. App.) 282 S. W. 834. Appellants appealed from the order allowing the sale of meats, but appellee does not complain of the order refusing it relief in the sale of its meat products. The question therefore for determination is: Did the trial court abuse its discretion in granting the temporary writ of injunction?

■ In refusing appellee the right to sell any of the products of its packing plant within the territory of the city of Dallas, appellants were acting purportedly under the provisions of a city ordinance. The right to enact this ordinance rests on delegated police power by the Legislature to all home-rule cities, "to enforce all ordinances necessary to protect health, life and property, and to prevent and summarily abate and remove all nuisances and to preserve and enforce the good government, order and security of the city and its inhabitants." Article 1175, subd. 34 (30 Tex. Jur. 120). The city of Dallas is a home-rule city. The exercise of police power is not an inherent right of a municipal corporation. Brewer v. State, 113 Tex. Cr. R. 522, 24 S.W.(2d) 409. By reason of this delegation of police power, the ordinance in question is valid, provided it is reasonable in its terms, and as it appears on its face to be reasonable, and as there is no question raised in this respect, the ordinance is considered a valid and legal enactment by the governing body of the city of Dallas.

The ordinance in question is entitled, "An ordinance providing for the inspection of meat and meat products offered for

sale within the city limits of Dallas, Dallas County, Texas, authorizing the Board of Health for the City of Dallas to adopt rules and regulations governing such inspection, providing penalties for the violation thereof, and declaring an emergency."

Appellants, in their answer, give the following fair résumé of the terms of this ordinance: "That under the terms of said ordinance, and particularly Section 1 thereof, it is provided that no person, firm or corporation shall expose or offer for sale or sell or otherwise dispose of, or have in his possession within the City of Dallas, any meat of any cattle, calf, sheep, swine or goat which does not have the meat inspection brand or other mark of identification of the Board of Health of the City of Dallas, the meat inspection brand or mark of identification of the United States Department of Agriculture, or the meat inspection brand of identification of such municipality whose meat inspection standard is equal to that maintained by the United States Department of Agriculture and recognized by the Board of Health of the City of Dallas. That under Section 2 of said ordinance it is provided that no person, firm or corporation shall ship, send or bring or cause to be brought into the City of Dallas any meat which does not have the meat inspection brand or identification mark recognized by the Board of Health of the City of Dallas. That under Section 3 of said ordinance it is provided that the Board of Health of the City of Dallas is directed and authorized to adopt rules and regulations governing the sanitation of a slaughter house, or houses, and the establishments where meat products are sold or manufactured and prescribes that the standard to be adopted shall be the same as established and maintained by the U. S. Department of Agriculture and known as Bureau of Animal Industry, Order No. 211 (revised) and all amendments thereto, which shall be applicable to municipal governments. That the remaining sections of said ordinance provide for the applicability of the said Bureau of Animal Industry, Order No. 211 (revised) and directs that any person violating any of the terms of this ordinance shall be punished as provided in said ordinance."

It will be observed that any person or corporation engaged in the packing business, before the meat or meat products of such packer can be sold in the city of Dallas for consumption by its inhabitants, such meat or meat products must either bear the inspection brand or other mark of identification of the board of health of the city of Dallas, or the meat inspection brand or mark of identification of the United States Department of Agriculture, or the meat inspection brand of a municipality in Texas, whose meat inspection standard is equal to that maintained by the United States Department of Agriculture, and recognized by the board of health of the city of Dallas. Dr. J. W. Bass, as director of public health, appears to have the authority given in the ordinance to the "Board of Health," to give or refuse recognition to the inspection brand of the output of a packing plant located in another city in this state.

Under the terms of the ordinance, such health officer can only approve the inspection brand placed upon meat or meat products by the inspection authorities of another municipal corporation, when such inspection standard is equal to that maintained by the United States Department of Agriculture. In the instant case, appellee's plant is located in the city of Fort Worth, and it is impracticable, if not impossible, for the city health officer of the city of Dallas to give a standard inspection to the meat and meat products of such plant. To do so would require the presence at least of three inspectors in such plant during the time the plant is in operation. This fact is recognized by the ordinance in question, in that in effect it puts the stamp of approval on the inspection standard of the city of Fort Worth, provided the inspection standard of such city is equal to that maintained by the United States Department of Agriculture, and recognized by the board of health of the city of Dallas. What significance is to be given the phrase "and recognized by the Board of Health of the City of Dallas," remembering that Dr. Bass, as public health officer of such city, is performing the function in respect to this requirement of the board of health?

Such phrase means that the board of health is primarily to determine whether the standard of inspection of the city of Fort Worth is equal to the standard maintained by the United States Department of Agriculture, and if it is found to be such standard, then it is clearly the duty of the board of health to give official recognition to the inspection brand of the

city of Fort Worth, and not to interfere with the sale of meat or meat products bearing such brand of inspection. It is a serious matter to deny to a citizen of this state the right to dispose of his food products in any given territory, and he should not be denied such right, save in the interest of public health. It is a more serious matter to permit the sale of unhealthy meat or meat products, to be consumed by the public. Under its delegated police power, the city of Dallas, in order to prevent the sale to its inhabitants of unwholesome meat, has the right to require an intrastate packer, whose product is not inspected by the United States Department of Agriculture, to submit his product to an inspection rigid enough to protect the public in respect to its meat products offered for sale.

The inspection of meat by the United States Department of Agriculture, of all packers doing an interstate business, is recognized as rigid enough to protect the public from the sale of unwholesome meat, and not so rigid as to exclude the selling of meat that is wholesome for food. This is the measure of the power given to the board of health in the city of Dallas, by the ordinance in question. This ordinance, when reduced to its last analysis, only prohibits the sale of meat that does not carry the stamp of wholesomeness given by a standard inspection, i. e., in the instant case, an inspection by the municipality of Fort Worth, which is equal to the inspection by the Department of Agriculture, of the product of those packers which do an interstate business in the sale of their products.

The enforcement of the ordinance in question, in the instant case, has been placed in the hands of Dr. Bass, director of health for the city of Dallas. To such official is committed the power of determining whether the inspection made by another city in Texas measures up to the inspection standard of the United States Department of Agriculture. This is a power that he cannot exercise arbitrarily, but must exercise fairly and judiciously. The ordinance in question does not and could not have given such officer the right to exclude from the trade territory of the city of Dallas meat that bears the inspection brand of a sister city that is equal to the inspection required of the interstate packers by the Agricultural Department of the United States, for meat carrying such a brand of inspection is recognized by the terms of the ordinance to be wholesome for consumption.

A court of equity has the power to enjoin such official at the suit of an injured packer from an arbitrary and unreasonable enforcement of this ordinance, and in the instant case the court having found, in effect, that the meat products of appellee's packing plant measured up to the standard of inspection required by the ordinance, there was no abuse of discretion in the issuance of the temporary writ of injunction. The trial court reached such conclusion after a careful hearing from both sides. This court is not warranted in setting aside the action of the trial court, and is of the opinion that the judgment should be affirmed, and it is so ordered.

All assignments of error have been carefully considered and the primary contentions of appellants are discussed in the foregoing opinion, but we have not found it necessary to discuss such contentions separately.

Affirmed.